STAFFMORE, LLC, Petitioner

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 10, 2014.
Decided March 5, 2014.
Publication Ordered May 22, 2014.

John A. Torrente, Langhorne, for petitioner.

Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and COVEY, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge COVEY.

Staffmore, LLC (Staffmore) petitions this Court for review of the Unemployment Compensation Board of Review's (UCBR) April 1, 2013 decision which reinstated the UCBR's February 20, 2013 order affirming the Referee's August 10, 2012 decision awarding Jesse Frasch (Claimant) unemployment compensation (UC) benefits. The sole issue[1] for this Court's review is whether the UCBR committed an error of law, and failed to base its decision on substantial evidence when it found that Claimant was an employee and not a self-employed independent contractor under Section 4($l$)(2)(B) of the UC Law (Law).[2]

Staffmore is a staffing service that provides workers to client agencies to assist in the care of children with emotional, behavioral or other issues. Claimant began working with Staffmore as a Therapeutic Support Staff (TSS) in November 2010. In that capacity, Claimant was free to accept or reject cases. Claimant signed an independent contractor agreement with Staffmore and worked on a single case offered by Staffmore's client, Delaware Valley Children's Center (DVCC), for 7 hours per week. Claimant was supervised by a behavioral specialist who developed the treatment plan that Claimant was required to follow. The behavioral specialist was not Staffmore's employee. Claimant's hours and work location were not determined by Staffmore but, instead, by DVCC. Claimant also worked for Chester Community Charter School (CCCS) and Central Bucks School District (CBSD) while working the Staffmore assignment. On April 16, 2012, DVCC ended the relationship with Staffmore. By April 24, 2012 email, Claimant advised Staffmore that he would no longer accept assignments from it because he was currently teaching, would be spending each day during the

---

1. Staffmore's Statement of the Questions Involved lists seven issues. Staffmore's first two issues—whether the UCBR committed an error of law, and whether its decision was based on substantial evidence—have been combined as one issue. Staffmore's remaining four issues are subsumed in Staffmore's first and second issues.

Staffmore raised one additional issue in its Statement of the Questions involved: "[Whether] the UCBR commit[ted] an error of law by vacating its November 7, 2012 Decision, as there was no evidence of record or

good cause to grant Claimant's request for reconsideration[.]" Staffmore Br. at 3. However, Staffmore failed to develop any argument or provide any legal basis in its brief in support of this issue. Therefore, the matter is waived. *See Am. Rock Mechs., Inc. v. Workers' Comp. Appeal Bd. (Bik and Lehigh Concrete Techs.),* 881 A.2d 54 (Pa.Cmwlth.2005).

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 753($l$)(2)(B).

summer with his son, and was expecting to teach in the fall.

■ Claimant subsequently applied for UC benefits. On June 1, 2012, the Altoona UC Service Center (Service Center) issued a determination finding that Claimant was self-employed and, thus, ineligible for benefits under Section 402(h) of the Law, 43 P.S. § 802(h). Claimant appealed and, on August 7, 2012, a Referee hearing was held. On August 10, 2012, the Referee issued a decision and order reversing the Service Center's Determination, finding that there was insufficient record evidence to establish that Claimant was an independent contractor, and determining that Claimant was eligible for benefits. Staffmore appealed to the UCBR. By November 7, 2012 decision and order, the UCBR reversed the Referee's decision, finding that Claimant was self-employed, that the sideline activity exception[3] did not apply and, thus, Claimant was ineligible for benefits under Section 402(h) of the Law.[4] Claimant filed a Request for Reconsideration.[5] On February 20, 2013, the UCBR reversed its November 7, 2012 decision, concluding that Claimant was not customarily engaged in an independent trade, occupation or business, and was not ineligible for benefits under Section 402(h) of the Law. Employer filed a Request for Reconsideration. On March 22, 2013, the UCBR granted reconsideration and vacated its February 20, 2013 order. On April 1, 2013, the UCBR ruled that this case was "controlled by the Commonwealth Court's [unreported] Opinion in [*Haines v. Unemployment Comp. Bd. of Review*, 2012 WL 8705092 (Pa.Cmwlth. No. 2522 C.D. 2011, filed December 5, 2012), *appeal denied*, 620 Pa. 338, 67 A.3d 788 (2013)], a case concerning a similarly-situated claimant and the same employer," and reinstated its February 20, 2013 order. Reproduced

3. This Court has noted:

> The Law recognizes that there are industrious individuals who, while employed by another, engage in self-employment which is not their primary source of income. These individuals who become unemployed through no fault of their own may, nonetheless, receive benefits under Section 402(h), which grants an exemption to the general self-employment exclusion. This is known as the sideline activity exception and provides that:
>> [A]n employe who is able and available for full-time work shall be deemed not engaged in self-employment by reason of continued participation without substantial change during a period of unemployment in any activity including farming operations undertaken while customarily employed by an employer in full-time work whether or not such work is in 'employment' as defined in this act and continued subsequent to separation from such work when such activity is not engaged in as a primary source of livelihood.
>
> 43 P.S. § 802(h). Our Courts have interpreted this statutory language and held that the sideline activity exception is applicable when the following conditions are met: '(1) that the self-employment activity precedes valid separation from full-time work; (2) that it continues without substantial change after separation; (3) that the claimant remains available for full-time work after separation; and (4) that the self-employment activity is not the primary source of the claimant's livelihood.' *Moshos v. Unemployment [Comp. Bd. of Review*, 77 Pa. Cmwlth. 493, 466 A.2d 258, 259 (1983)]. A claimant who wishes to fall within the exception bears the burden of showing that *all* of these requirements are met.

*LaChance v. Unemployment Comp. Bd. of Review*, 987 A.2d 167, 171 (Pa.Cmwlth.2009).

4. The UCBR concluded that the sideline activity exception was inapplicable because Claimant did not establish that he was employed full-time while providing services through Staffmore. *See* Reproduced Record at 229a.

5. Claimant's Request for Reconsideration did not raise the independent contractor issue, but instead argued that Claimant was eligible for benefits under the sideline activity exception. Reproduced Record at 148a.

Record (R.R.) at 235a. Staffmore appealed to this Court.[6]

Staffmore argues that the UCBR committed an error of law and failed to base its decision on substantial evidence when it concluded that Claimant was not a self-employed independent contractor under Section 4(*l*)(2)(B) of the Law. Specifically, Staffmore contends that the UCBR improperly applied the rationale in *Haines* to the facts of the instant case. Staffmore further asserts that *Haines* was wrongly decided.

■ Section 402(h) of the Law provides that an employee will be ineligible for benefits for any week in which he is self-employed. Further, Section 4(*l*)(2)(B) of the Law, which defines "employment" provides:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently[-]established trade, occupation, profession or business.

43 P.S. § 753(*l*)(2)(B). "[A] determination regarding the existence of an employer/employee relationship is a question of law that is determined on **the unique facts of each case.**" *Danielle Viktor, Ltd. v. Dep't of Labor & Indus., Bureau of Emp'r Tax Operations*, 586 Pa. 196, 212, 892 A.2d 781, 791 (2006) *(Viktor) (quoting Universal Am–Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 563 Pa. 480, 486, 762 A.2d 328, 330–31 (2000)) (emphasis added). Because the primary question before this Court is whether Claimant was an independent contractor, the determination is a legal one based upon the record evidence. Moreover, since it is uncontested that Claimant was free from Staffmore's direction and control, the only issue before the court is whether Staffmore met its burden of establishing that Claimant was customarily engaged in an independently-established trade, occupation, profession or business. *See Glatfelter Barber Shop v. Unemployment Comp. Bd. of Review*, 957 A.2d 786 (Pa.Cmwlth.2008).

The UCBR granted Claimant UC benefits based on this Court's unreported *Haines* decision. In *Haines*, a case also involving Staffmore, the claimant worked approximately thirty-four hours per week as a TSS. The UCBR affirmed the Referee's denial of benefits concluding that the claimant was an independent contractor. This Court reversed. Although this Court agreed that Staffmore did not direct or control the claimant's work, the Court found that the claimant was not self-employed, because she was not "customarily engaged in an independently[-]established trade, occupation, profession or business." 43 P.S. § 753(*l*)(2)(B). The *Haines* Court first noted that "a worker can be considered an independent contractor **only** if he or she is in business for himself or herself." *Haines*, slip op. at 6 (*quoting Viktor*, 586 Pa. at 212, 892 A.2d at 791). The decision closely followed the wording of Section 4(*l*)(2)(B) of the Law which mandates that in order for a claimant to be an independent contractor, he or she must be "**customarily engaged** in an **independently[-]established trade, occupation, pro-**

---

6. This Court's review is limited to determining whether the findings of fact were supported by substantial evidence, whether constitutional rights were violated, or whether errors of law were committed. *Johnson v. Unemployment Comp. Bd. of Review*, 869 A.2d 1095 (Pa.Cmwlth.2005).

fession or business." 43 P.S. § 753(*l* )(2)(B) (emphasis added). The statutory wording clearly provides for the word "customarily" to modify the word "engaged." "Customary" is defined as "based on or established by custom" or "commonly practiced, used, or observed." *Merriam–Webster's Collegiate Dictionary* 308 (11th ed. 2004). "Custom" means "a usage or practice common to many or to a particular place or class or **habitual with an individual**" or "**repeated practice**." *Id.* (emphasis added). "Engage" is defined as "to employ or involve oneself; to take part in; **to embark on.**" *Black's Law Dictionary* 608 (9th ed. 2009) (emphasis added). Therefore, the *Haines* Court recognized that:

> The proper approach is to focus the inquiry on the conduct of the individual claimant. Thus, the appropriate inquiry is whether **the claimant, was, in fact, customarily engaged** in a trade, occupation, profession or business that was independently established.

*Haines,* slip op. at 6.

The *Haines* Court relied on *Jia v. Unemployment Compensation Board of Review,* 55 A.3d 545 (Pa.Cmwlth.2012), wherein, this Court noted:

> This Court recently emphasized the importance of an employer supplying evidence to show that a claimant is engaged in an independent business in *Minelli v. Unemployment Compensation Board of Review,* 39 A.3d 593 (Pa.Cmwlth.2012). In *Minelli,* the claimant signed a contract as an independent contractor. The contract specified that she was 'free to perform services for other parties while' working for the employer. *Id.* at 596. In that case, the [UCBR] specifically found that the claimant had no supervision and worked with other independent contractors, and was paid by the client. However, the

claimant testified that she was not and never was customarily engaged in an independently[-]established trade or business. **This Court reversed the [UCBR], holding that despite the fact the claimant could work for others, the evidence did not show the claimant was customarily engaged in an independent business.**

Similarly, and significantly, the record here lacks any evidence that Claimant customarily engaged in an independent business or performed programming services for any other business. As in *Minelli* and *Sharp [Equip. Co. v. Unemployment Comp. Bd. of Review,* 808 A.2d 1019 (Pa.Cmwlth.2002)]*,* Claimant's testimony is clear that he was not so engaged, and there is no contrary evidence. The single act of signing the consulting contract here does not suffice. *Sharp.* The contract language providing that Claimant could work for others does not establish that he engaged in an independent business, and did work for others. *Minelli.* Moreover, the scope of work requires Claimant to work in Employer's offices during specified business hours, thus undermining his ability to work for others. *See Sharp.* The test an employer must satisfy to overcome the presumption of an employment relationship is simply not met here.

*Jia,* 55 A.3d at 549 (emphasis added). As in *Jia,* the *Haines* Court considering the record evidence concluded that despite the fact the claimant had signed an independent contractor agreement:

> Staffmore has not met its burden. . . . [W]e find that Claimant was not a self-employed independent contractor. As to the first factor, at the time Claimant began working with Staffmore, she was not capable of performing the activities in question for anyone who wished to avail themselves of the services. Claim-

ant was not certified or even trained to perform the TSS work until she began working for Staffmore, at which time Staffmore trained her, and procured certifications on her behalf. Thus, based on the record Claimant trained and received certifications in order to work for Staffmore, **not** to independently establish[ ] [a] trade . . . or business.

We further conclude that the nature of the business compelled [Claimant] to look to only a single employer for the continuation of such services. Although Staffmore testified that Claimant was permitted to work for other companies, doing so was not an option for Claimant because her working hours with Staffmore provided her little time to perform TSS services elsewhere. The UCBR found that Claimant worked approximately thirty-four hours per week. Accordingly, as a practical matter, Claimant had no time to contract with other agencies.

Further, there is no evidence that Claimant ever held herself out as available for employment by anyone other than Staffmore.

*Haines*, slip op. at 7–8.

■ Thus, the *Haines* Court held the facts did not support the conclusion that the claimant was **customarily engaged** in an independently-established occupation. The instant case is substantially similar to *Haines*. The UCBR correctly noted the factual similarities between the instant case and *Haines*. As in *Haines*, Claimant provided TSS services through Staffmore and also received his TSS training from Staffmore. Further, "there is no evidence that Claimant ever held [himself] out as available for employment [as a TSS] by anyone other than Staffmore." *Haines*, slip op. at 8. Although Claimant only worked seven hours per week for Staffmore and worked for CCCS and CBSD as

a teacher, there is no evidence that he provided TSS services to CCCS, CBSD or anyone else. In fact, Claimant testified that he considered his field to be "teach[ing]." R.R. at 48a. Thus, as in *Haines*, Staffmore did not meet its burden to prove Claimant "commonly," "repeated[ly]," "employ[ed] . . . oneself" or "embarked on" a trade, occupation, profession or business that was independently established. *Merriam–Webster's Collegiate Dictionary* 308 (11th ed. 2004); *Black's Law Dictionary* 608 (9th ed. 2009).

Section 3 of the Law declares as part of its public policy:

[T]he public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

43 P.S. § 752. Further, the Pennsylvania Supreme Court has recognized:

[T]he provisions of the Unemployment Compensation Law must be liberally construed to provide the broadest possible benefits to those who experienced forced unemployment. As this Court stated in *Penn Hills School District v. Unemployment Compensation Board of Review*, 496 Pa. 620, 625, 437 A.2d 1213, 1215 (1981), 'Mindful of this remedial, humanitarian objective, the courts have always interpreted the benefits sections liberally and broadly to alleviate the distress **of the involuntarily unemployed.**'

*Renne v. Unemployment Comp. Bd. of Review*, 499 Pa. 299, 305 n. 4, 453 A.2d 318, 321 n. 4 (1982) (emphasis added). Given the remedial nature of the Law, the UCBR properly determined that Staffmore did not establish that Claimant was a self-employed independent contractor.

However, there is an additional concern regarding Claimant's eligibility for UC benefits that the UCBR did not address, and directly relates to whether Claimant was "involuntarily unemployed." *Id.* Having determined that Claimant was not an independent contractor, the question remains as to whether Claimant terminated his position without a necessitous and compelling reason.[7] It is undisputed that Claimant quit his Staffmore position. Claimant admitted that, on April 24, 2012, he "sent an email [to Staffmore] saying that [he] wasn't going to pick up any other cases." R.R. at 48a. That email specifically stated:

> As you know my case with DT ended recentley [sic] and after giving it lots of thought[,] I don't think that I will pick up another case. I'm currently teaching and plan to teach next year as well[.] [I]n addition[,] I'll be home all day with my son throughout the summer so time to take on a case just isn't there. I really enjoyed working with you and everyone involved in my case and I have, and will continue to, recommend the agency for friends of mine looking for TSS work. Please let me know what you need from me and I wish you well.

R.R. at 76a.

Section 402(b) of the Law provides that an employee shall be ineligible for compensation for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature...." 43 P.S. § 802(b).

> An employee who claims to have left employment for a necessitous and compelling reason must prove that: (1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances

would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and, (4) the claimant made a reasonable effort to preserve [his] employment.

*Brunswick Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Review,* 906 A.2d 657, 660 (Pa.Cmwlth.2006).

Because the issue was not addressed by the UCBR, the UCBR's decision is vacated, and this matter is remanded for a hearing on the issue of whether Claimant voluntarily terminated his employment without a necessitous and compelling reason. *See Sharp.*

For all of the above reasons, the UCBR's decision is vacated and the matter is remanded for a hearing on whether Claimant voluntarily terminated his employment without a necessitous and compelling reason.

## ORDER

AND NOW, this 5th day of March, 2014, the Unemployment Compensation Board of Review's April 1, 2013 order is vacated, and the matter is remanded for a hearing on whether Jesse Frasch voluntarily terminated his employment without a necessitous and compelling reason.

Jurisdiction is relinquished.

---

7. Staffmore attempted to raise the issue of Claimant's voluntary employment termination and to cross-examine Claimant on his April 24, 2012 email. However, the Referee concluded that the issue was not relevant.