Jason Clark, : 
                   Petitioner : 
         v. : 
 : 
Unemployment Compensation : 
Board of Review, :   No. 2425 C.D. 2014
          Respondent :   Submitted: August 21, 2015


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
              HONORABLE MARY HANNAH LEAVITT, Judge
              HONORABLE ANNE E. COVEY, Judge

OPINION BY
JUDGE COVEY                  FILED: December 23, 2015

      Jason Clark (Claimant) petitions, pro se, for review of the Unemployment Compensation (UC) Board of Review's (UCBR) December 1, 2014 order affirming the Referee's decision denying Claimant UC benefits under Section 4(w)(2) of the UC Law (Law).[1]  Claimant essentially presents one issue for this Court's review: whether Claimant earned sufficient wages from employment during the applicable period to qualify for UC benefits under Section 4(w)(2) of the Law. After review, we reverse.

      Claimant applied for UC benefits on March 31, 2013 following his separation from work with Baptist Children's Services.  The Department of Labor and Industry (Department) granted Claimant weekly benefits at a rate of $396.00.  On March 30, 2014, as Claimant's initial benefits year was about to expire, he again applied for benefits.  On August 18, 2014, the Duquesne UC Service Center determined that Claimant was not eligible for UC benefits under Section 4(w)(2) of the Law.  Claimant appealed, and a Referee hearing was held on September 19, 2014.

---

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 753(w)(2).

On September 22, 2014, the Referee affirmed the UC Service Center's determination. Claimant appealed to the UCBR which affirmed the Referee's decision denying Claimant UC benefits under Sections 401 and 4(w)(2) of the Law.[2] Claimant appealed to this Court.[3]

Claimant argues that the UCBR erred in finding that he did not earn sufficient income during the applicable period to qualify for UC benefits. He contends that he supplied proof on several occasions that he exceeded the minimum income required under Section 4(w)(2) of the Law during the relevant period.

Section 401(a) of the Law authorizes UC benefits to be paid to employees who are or become unemployed and, *inter alia*, have been paid "wages for employment" under Section 404(c) of the Law, 43 P.S. § 804(c) (relating to rate and amount of compensation).[4] 43 P.S. § 801(a). After a claimant has been eligible for and received UC benefits in a preceding year, Section 4(w)(2) of the Law then imposes an additional eligibility requirement:

---

[2] 43 P.S. § 801. Claimant sought reconsideration, which was denied as untimely.

[3] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

[4] Section 401(a) of the Law specifically states:

> Compensation shall be payable to any employe who is or becomes unemployed, and who--
>
> (a) Satisfies both of the following requirements:
>
> (1) Has, within his base year, been paid wages for employment as required by [S]ection 404(c) of [the Law (relating to rate and amount of compensation)].
>
> (2) Except as provided in [S]ection 404(a)(3) [of the Law], not less than forty-nine and one-half per centum (49.5%) of the employe's total base year wages have been paid in one or more quarters, other than the highest quarter in such employe's base year.

43 P.S. § 801(a).

2

An application for benefits filed after the termination of a preceding benefit year by an individual shall not be considered a Valid Application for Benefits within the meaning of this subsection,[5] **unless such individual has**, subsequent to the beginning of such preceding benefit year and prior to the filing of such application, worked and **earned wages in 'employment'** as defined in this [Law] **in an amount equal to or in excess of six (6) times his weekly benefit rate** in effect during such preceding benefit year.

43 P.S. § 753(w)(2) (emphasis added). "A claimant has the burden of proving financial eligibility for UC benefits." *Logan v. Unemployment Comp. Bd. of Review*, 103 A.3d 451, 453 (Pa. Cmwlth. 2014). Thus, in order to meet this requirement, Claimant had to demonstrate that he earned wages from employment totaling at least $2,376.00 ($396.00 x 6) between March 31, 2013 and March 30, 2014.[6]

At the hearing, Claimant testified and furnished documentation that he earned wages totaling $2,432.91 during the relevant period. *See* Notes of Testimony, September 19, 2014 (N.T.) at 4; *see also* Ex. C-1. Claimant presented payment logs reflecting that he was paid $1,393.00 for working on an as-needed basis for RDP Enterprises as follows: May 2013 ($310.00), May 19, 2013 ($200.00), June 3, 2013 ($80.00), June 10, 2013 ($50.00), July 14, 2013 ($50.00), July 31, 2013 ($215.00), August 3, 2013 ($47.91), September 14, 2013 ($47.00), October 28, 2013 ($150.00), November 11, 2013 ($200.00), November 24, 2013 ($150.00), December 19, 2013

---

[5] A **'Valid Application for Benefits'** means an application for benefits on a form prescribed by the [D]epartment, which is filed by an individual, as of a day not included in the benefit year previously established by such individual, who (1) has been separated from his work or who during the week commencing on the Sunday previous to such day has worked less than his full time due to lack of work and (2) is qualified under the provisions of section four hundred and one (a), (b) and (d).

43 P.S. § 753(w)(1).

[6] Before Section 4(w)(2) of the Law was amended effective January 1, 2013, a claimant only had to earn six times his weekly benefit rate, whether or not it came from employment. However, since the amendment, the subject earnings must be from employment.

($50.00), January 7, 2014 ($50.00), January 22, 2014 ($175.00), February 5, 2014 ($200.00), February 24, 2014 ($75.00), May 15, 2014 ($250.00), June 2, 2014 ($125.00) and June 5, 2014 ($55.00).[7] *See* N.T. at 4-7; *see also* Exs. C-1, C-2. He disclosed that RDP Enterprises did not issue an Internal Revenue Service (IRS) W-2 Form to him or deduct taxes from his pay, but rather he received and paid taxes under an IRS Form 1099.[8] *See* N.T. at 5-6.

In addition, Claimant stated and provided documentation that he was paid $672.91 for maintenance and repair work on an as-needed basis for McPierce LLC as follows: August 8, 2013 ($97.91), October 7, 2013 ($50.00), December 16, 2013 ($200.00), January 4, 2014 ($125.00), March 4, 2013 ($100.00) and June 3, 2014 ($100.00). *See* N.T. at 7; *see also* Exs. C-1, C-2A. Claimant acknowledged that he did not receive a W-2 Form from McPierce LLC. *See* N.T. at 7.

Claimant further declared and supplied documentation that he earned $75.00 from RP Vocational Rehabilitation LLC on October 9, 2013. *See* N.T. at 7-8; *see also* Exs. C-1, C-3. Claimant also claimed to have earned more than $260.00 officiating track and field meets for Germantown Friends School, but acknowledged that he could only verify earnings on April 8, 2014 ($97.50), May 14, 2014 ($65.00) and May 17, 2014 ($97.50). *See* N.T. at 8; *see also* Exs. C-1, C-4. Claimant's payment documents expressly reflect that as an official, he was "an independent contractor, not an employee of the league nor of the schools involved in the event." Ex. C-4.

Moreover, Claimant described that he provided grant writing and consulting services for Emerging Ministries Corporation between September 2013 and December 2013, earning $750.00 (in the form of a $250.00 monthly stipend), and

---

[7] Despite Claimant's testimony that he performed clerical work for RDP Enterprises, the check register reveals that he cleaned and landscaped. *See* N.T. at 5, Ex. C-2.

[8] Federal tax law mandates employers to report wages paid to employees on a W-2 Form. 26 C.F.R. § 1.6041-2(a).

worked on an hourly as-needed basis in January and February 2014. *See* N.T. at 9-12; *see also* Ex. C-1. Claimant contended that he provided documentation to the Department of those wages, but he did not produce it at the hearing. *See* N.T. at 10, 12. Claimant believed he received a Form 1099 from Emerging Ministries Corporation and submitted it to the Department. *See* N.T. at 12-13.

Based upon the evidence Claimant presented at the hearing, the Referee calculated that Claimant documented only $2,268.00 in earnings from casual labor between March 31, 2013 and March 30, 2014 as follows: $1,620.00 from RDP Enterprises, $573.00 from McPierce LLC and $75.00 from RP Vocational Rehabilitation LLC. Because the total amount was less than the $2,376.00 threshold, the Referee denied Claimant's application for UC benefits under Section 4(w)(2) of the Law.

The law is well settled that "[i]n unemployment compensation matters, 'the [UCBR] is the ultimate fact finder and is empowered to resolve conflicts in the evidence and to determine the credibility of witnesses.'" *Goppman v. Unemployment Comp. Bd. of Review*, 845 A.2d 946, 947 n.2 (Pa. Cmwlth. 2004) (quoting *Owoc v. Unemployment Comp. Bd. of Review*, 809 A.2d 441, 443 (Pa. Cmwlth. 2002)). Moreover,

> [s]ubstantial evidence is relevant evidence upon which a reasonable mind could base a conclusion. In deciding whether there is substantial evidence to support the [UCBR's] findings, this Court must examine the testimony in the light most favorable to the prevailing party, . . . giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence.

*Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999). Here, the UCBR affirmed the Referee's determination, but found that Claimant documented $2,767.82 in earnings between March 31, 2013 and March 30, 2014 as follows: $2,119.91 from RDP Enterprises, $572.91 from McPierce LLC and

$75.00 from RP Vocational Rehabilitation LLC. Despite that Claimant's earnings exceeded the $2,376.00 threshold, the UCBR concluded that since Claimant did not receive W-2 Forms for his earnings, he actually **"earned no wages in employment," but rather was self-employed**. UCBR Dec. at 2 (emphasis added).

Since Claimant provided no proof of wage earnings from Emerging Ministries Corporation, and his only proof of earnings from Germantown Friends School occurred outside the relevant time period, those purported wages were properly excluded from the Referee's and UCBR's calculations. We agree that Claimant documented that **RP Vocational Rehabilitation LLC paid him $75.00**, and **McPierce LLC paid him $572.91** during the applicable time period. However, we disagree with the UCBR that Claimant was paid $2,767.82 between March 31, 2013 and March 30, 2014. Rather, based upon our calculations, Claimant established that **RDP Enterprises paid him $2,049.91** during that period.[9] Thus, Claimant proved that between March 31, 2013 and March 30, 2014 he was paid **$2,697.82**, which **clearly exceeds the $2,376.00 threshold**.

The question remains, however, whether Claimant's earnings were "wages [from] 'employment.'" 43 P.S. § 753(w)(2). The Law defines "**[w]ages**" as "all remuneration . . . paid by an employer to an individual with respect to his employment . . . . " 43 P.S. § 753(x). "**Employment**" is defined therein as "all personal service performed for remuneration by an individual under any contract of hire, express or implied, written or oral[.]" 43 P.S. § 753(l)(1). The UCBR determined that Claimant was self-employed because he did not receive W-2 Forms and, thus, he "earned no wages in employment." UCBR Dec. at 2.

---

[9] This Court's $2,049.91 calculation represents a $70.00 difference from the UCBR's $2,119.91 total. It appears that the UCBR included in its calculation a $70.00 payment made by RDP Enterprises to "White Enterprises, Inc." on February 2, 2014, which was erroneously highlighted in the Referee hearing exhibit as a payment to Claimant. N.T. Ex. C-2 at 5.

6

We acknowledge that Section 402(h) of the Law provides that an employee will be ineligible for benefits for any week in which he is self-employed. "The term 'self-employment' is not defined in the Law; however, the courts have relied upon [S]ection 4(l)(2)(B) of the Law, 43 P.S. § 753(l)(2)(B), to fill the void . . . ." *Beacon Flag Car Co., Inc. v. Unemployment Comp. Bd. of Review*, 910 A.2d 103, 107 (Pa. Cmwlth. 2006). Section 4(l)(2)(B) of the Law states, in pertinent part:

> **Services performed by an individual for wages shall be deemed to be employment** subject to this act, **unless** and until it is shown to the satisfaction of the [D]epartment that-
> -(a) **such individual has been and will continue to be free from control or direction** over the performance of such services both under his contract of service and in fact; and (b) **as to such services such individual is customarily engaged in an independently[-]established trade**, occupation, profession or business.

43 P.S. § 753(l)(2)(B) (emphasis added).[10] "[T]he existence of an employer/employee relationship is a question of law that depends upon the unique facts of each case." *Res. Staffing, Inc. v. Unemployment Comp. Bd. of Review*, 961 A.2d 261, 263 (Pa. Cmwlth. 2008). However, "there is a presumption in the . . . Law

---

[10] Section 4(l)(2)(B) of the Law . . . mandates that in order for a claimant to be an independent contractor, he or she must be '**customarily engaged** in an **independently[-] established trade, occupation, profession or business.**' 43 P.S. § 753(l)(2)(B) (emphasis added). The statutory wording clearly provides for the word 'customarily' to modify the word 'engaged.' 'Customary' is defined as 'based on or established by custom' or 'commonly practiced, used, or observed.' *Merriam–Webster's Collegiate Dictionary* 308 (11th ed. 2004). 'Custom' means 'a usage or practice common to many or to a particular place or class or **habitual with an individual**' or '**repeated practice**.' *Id.* (emphasis added). 'Engage' is defined as 'to employ or involve oneself; to take part in; **to embark on.**' *Black's Law Dictionary* 608 (9th ed. 2009) (emphasis added).

*Staffmore, LLC v. Unemployment Comp. Bd. of Review*, 92 A.3d 844, 847-48 (Pa. Cmwlth. 2014).

that an individual receiving wages is an employee and not . . . engaged in self-employment." *Training Assocs. Corp. v. Unemployment Comp. Bd. of Review*, 101 A.3d 1225, 1233 (Pa. Cmwlth. 2014) (quoting *Pasour v. Unemployment Comp. Bd. of Review,* 54 A.3d 134, 137 (Pa. Cmwlth. 2012)).

This Court has held that self-employment requires a positive act of establishing a private enterprise or independent business. *See Staffmore, LLC v. Unemployment Comp. Bd. of Review*, 92 A.3d 844 (Pa. Cmwlth. 2014); *see also Kirk v. Unemployment Comp. Bd. of Review,* 425 A.2d 1188 (Pa. Cmwlth. 1981); *Miller v. Unemployment Comp. Bd. of Review,* 405 A.2d 1052 (Pa. Cmwlth. 1979). "[T]he fact that an unemployed person . . . accept[s] an occasional offer of work is simply not enough to demonstrate that said individual is customarily engaged in an independently established trade, occupation, profession or business[]" and, therefore, self-employed.[11]  *Minelli v. Unemployment Comp. Bd. of Review*, 39 A.3d 593, 598 (Pa. Cmwlth. 2012) (quoting *Silver v. Unemployment Comp. Bd. of Review*, 34 A.3d 893, 898 (Pa. Cmwlth. 2011)).

> In *Minelli,* the claimant signed a [consulting] contract as an independent contractor.  The contract specified that she was 'free to perform services for other parties while' working for the employer.  *Id.* at 596.  In that case, the [UCBR] specifically found that the claimant had no supervision and worked with other independent contractors, and was paid by the client.  However, the claimant testified that she was not and never was customarily engaged in an independently[-] established trade or business.  This Court reversed the [UCBR], holding that despite the fact the claimant could work for others, the evidence did not show the claimant was customarily engaged in an independent business.

---

[11] Even "a contract that on its face purports to establish an independent contractor relationship may not necessarily establish an independent contractor relationship.  Rather, findings regarding the actual working relationship between worker and employer determine whether this element is satisfied." *Kurbatov v. Dep't of Labor & Indus.,* 29 A.3d 66, 70 (Pa. Cmwlth. 2011) (citation omitted).

> Similarly, and significantly, the record here lacks any evidence that Claimant customarily engaged in an independent business or performed programming services for any other business. As in *Minelli* and *Sharp [Equip. Co. v. Unemployment Comp. Bd. of Review,* 808 A.2d 1019 (Pa.Cmwlth.2002)], Claimant's testimony is clear that he was not so engaged, and there is no contrary evidence. The single act of signing the consulting contract here does not suffice. *Sharp.* The contract language providing that Claimant could work for others does not establish that he engaged in an independent business, and did work for others. *Minelli.* Moreover, the scope of work requires Claimant to work in Employer's offices during specified business hours, thus undermining his ability to work for others. *See Sharp.* The test an employer must satisfy to overcome the presumption of an employment relationship is simply not met here.

*Jia v. Unemployment Comp. Bd. of Review*, 55 A.3d 545, 549 (Pa. Cmwlth. 2012).

Likewise, the evidence in this case did not overcome the strong presumption that Claimant was an employee of RP Vocational Rehabilitation LLC, McPierce LLC and RDP Enterprises. There is no evidence in this record that Claimant had established a private enterprise or independent business through which he provided services for RP Vocational Rehabilitation LLC, McPierce LLC and RDP Enterprises. The mere fact that Claimant did not receive W-2 Forms from those entities is not conclusive of self-employment.

In fact, in concluding whether an employment relationship exists, "[n]o single factor is controlling, [] therefore, the ultimate conclusion must be based on the totality of the circumstances." *Res. Staffing, Inc.*, 961 A.2d at 264. Thus, although a W-2 Form may be one type of evidence that an individual earned wages in employment and was not self-employed, **this Court has found no precedent under which such documentation was the only conclusive evidence of earnings** sufficient to satisfy Section 4(w)(2) of the Law. In *Gakuba v. Unemployment Compensation Board of Review* (Pa. Cmwlth. Nos. 1089-92 C.D. 2012, filed March

9

27, 2013),[12] this Court affirmed the UCBR's denial of benefits under Section 4(w)(2) of the Law where the claimant failed to provide *any* proof of earnings during the relevant period. The Department's witness in that case stated that the Department would have accepted paystubs, a W-2 Form, a Form 1099, *or* even a letter explaining the terms of claimant's employment, dates and remuneration, together with cancelled checks or some other payment documentation. Clearly, even the Department has conceded that a W-2 Form is not the only evidence of an employment relationship.

Lack of a W-2 Form cannot alone be sufficient to establish independent contractor relationship, especially because a W-2 Form is an employer-issued form. As discussed above, each case must be decided on the totality of all the facts. Before us is a strong presumption that an employment relationship existed between Claimant and RP Vocational Rehabilitation LLC, McPierce LLC and RDP Enterprises. The Department did not offer any evidence to overcome that presumption. Therefore, we cannot agree that Claimant in this case "earned no wages in employment" simply because he did not receive W-2 Forms from RP Vocational Rehabilitation LLC, McPierce LLC and RDP Enterprises. UCBR Dec. at 2. Examining the credible evidence in the light most favorable to the Department as we must, we hold Claimant satisfactorily proved that between March 31, 2013 and March 30, 2014, he earned wages from employment that exceeded the $2,376.00 threshold. Thus, Claimant was eligible for benefits under Section 4(w)(2) of the Law. Accordingly, the UCBR erred by concluding that Claimant failed to meet those eligibility requirements.[13]

---

[12] This Court's unreported memorandum opinions may not be cited as binding precedent; however, they may be cited "for [their] persuasive value[.]" Section 414 of the Commonwealth Court's Internal Operating Procedures.

[13] In light of this holding, we need not address Claimant's contentions that his failure to meet his eligibility requirements resulted from the Department's improper directions and negligence.

Notwithstanding, his argument is waived. In Claimant's appeal from the Referee's decision to the UCBR, he stated:

Based upon the foregoing, the UCBR's order is reversed.

_____
ANNE E. COVEY, Judge

---

Reason for appeal: All submitted evidence was not added in the total that must have been earned in order to qualify for benefits. There were (3) earning receipts provided and submitted into evidence (the final exhibit I submitted) from Germantown Academy (interact athletic league) school . . . totaling $225[.00], which is more than enough to cover the difference cited in the decision and to reverse the verdict.

Certified Record Item 8 at 3. Claimant did not raise Department misinformation or negligence in his appeal to the UCBR, nor did he provide argument or evidence to that effect at the Referee hearing. "[I]t is well settled that issues not specified in an appeal before the [UCBR] are waived for purposes of review by this Court." *Tri-State Scientific v. Unemployment Comp. Bd. of Review*, 589 A.2d 305, 307 (Pa. Cmwlth. 1991).

Even if not waived, this Court would not review this issue since Claimant's arguments focus upon Claimant's base year calculations rather than his immediately preceding benefit year totals at issue here.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason Clark, :
                    Petitioner :
          v. :
                    :
Unemployment Compensation :
Board of Review, : No. 2425 C.D. 2014
                    Respondent :

## O R D E R

AND NOW, this 23rd day of December, 2015, the Unemployment Compensation Board of Review's December 1, 2014 order is reversed.

_____
ANNE E. COVEY, Judge