# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Humanus Corporation, : 
                     Petitioner : 
                          : 
        v. :   No.  1193 C.D. 2019
                          :   Submitted: August 7, 2020
Unemployment Compensation : 
Board of Review, : 
                   Respondent : 

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE J. ANDREW CROMPTON, Judge

OPINION
BY JUDGE CROMPTON              FILED:  October 23, 2020

Humanus Corporation (Humanus)[1] petitions for review from an order of the Unemployment Compensation Board of Review (Board) finding Patrick Rein (Claimant) not ineligible for unemployment compensation (UC) benefits under Section 402(h) of the Unemployment Compensation Law (Law),[2] after concluding

---

[1] Humanus describes itself as

> an academic and related therapy referral provider.  Humanus' clients are private, public, charter and cyber schools throughout the nation.  Humanus' business model is based off of a passion for helping others - which is accomplished by locating/recruiting qualified [i]ndependent [c]ontractors, which fit the specific needs of Humanus' clients.  Humanus then refers these [i]ndependent [c]ontractors to schools throughout the nation in need of special services.

Humanus' Br. at 5.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(h).

Claimant was not self-employed.[3]  Humanus asserts that the Board erred as a matter of law in determining Claimant was not self-employed where there was substantial evidence to the contrary.  Discerning no error below, we affirm.

## I.    Background

Claimant was last employed at Lighting by Jared as a full-time customer care agent on December 11, 2018, and was laid off due to lack of work. Certified Record (C.R.), Item No. 15, Unemployment Compensation (UC) Referee's Decision/Order, Finding of Fact (F.F.) No. 1.  Claimant was subsequently hired as an independent contractor with Humanus to work as a tutor for students referred to Humanus by the Achievement House Cyber Charter School (School) at a rate of $18.00 per hour.  F.F. No. 3.  On December 19, 2018, Claimant signed an independent contractor agreement with Humanus and completed a federal W-9 tax form.  F.F. No. 4.  The UC referee determined that Claimant would receive a federal 1099 tax form from Humanus at the end of the 2019 tax year, that Claimant was aware no taxes or deductions were being taken from his pay, and that Claimant was also aware that Humanus considers him to be an independent contractor.  F.F. Nos. 5 and 6.  Claimant does not receive any benefits in addition to his hourly rate of pay, such as pay for leave or medical insurance.  However, he is required to submit a weekly invoice for his hours tutoring the School's students, and he submits case notes to a Humanus representative.  F.F. Nos. 7 and 8.  Humanus bills the School and, in turn, pays Claimant once a month, via direct deposit.  F.F. No. 9.

---

[3] Accordingly, the Board also determined that there was no overpayment to Claimant for the weeks ending January 19, 2019, through February 16, 2019.

Claimant uses his own laptop computer to complete his tutoring duties, online, through a Zoom meeting room provided by Humanus. F.F. Nos. 10 and 11. Claimant is free to work for other companies while providing his services to Humanus. F.F. No. 12. Claimant pays for his own clearances, as necessary, to tutor students. F.F. No. 13. Claimant is not required to attend any meetings with a Humanus representative, and he performs his tutoring duties from home. F.F. No. 15. Claimant was not provided any training by Humanus in regard to tutoring students. F.F. No. 16. Claimant is not required to provide any teaching supplies, and he may reject referrals from Humanus if he so chooses. F.F. Nos. 17 and 18. Claimant has not previously provided tutoring services as an independent contractor for any other company and is not currently doing so. F.F. No. 19. Claimant began working 32 hours per week at Clyde Peeling's Reptile Land, in addition to his work tutoring students through Humanus, for approximately 15 hours per week. F.F. No. 20.

Reversing the initial determination of the UC service center, the UC referee determined that Claimant is not ineligible for UC benefits in accordance with Section 402(h) of the Law.

## II. UC Referee's Decision and Order

Section 402(h) of the Law, 43 P.S. §802(h), states, in pertinent part: "An employe shall be ineligible for compensation for any week in which he is engaged in self-employment."

The Law does not define "self-employment," but Section 4(*l*)(2)(B) of the Law defines "employment" as follows:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that -- (a) such individual has been and will continue to be free from control or direction over their performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.[4]

43 P.S. §753(*l*)(2)(B).

The UC referee explained the two-pronged test for determining whether a worker is an employee, noting that the courts in Pennsylvania have held the purported employer has the burden of proving the claimant is self-employed, *i.e.*, free from direction and control and customarily engaged in an independently established trade, occupation, business, or profession. Based on this test, the UC referee determined that Humanus had not met its burden of showing Claimant, here, was self-employed, and thus, Claimant was not ineligible for UC benefits pursuant to Section 402(h) of the Law. Accordingly, the referee reversed the determination of the UC service center.[5] C.R., Item No. 15. Humanus subsequently appealed to the Board.

---

[4] Parts (a) and (b), as noted here, are commonly referred to as the "two-pronged test" to determine whether an applicant for unemployment benefits was an employee or independent contractor at the time of separation from employment. *Minelli v. Unemployment Comp. Bd. of Review*, 39 A.3d 593, 595 (Pa. Cmwlth. 2012).

[5] The UC referee also dismissed the UC service center's determination of a non-fault overpayment of $1,500 for Claimant's claim weeks ending January 19, 2019, through February 16, 2019. C.R., Item No. 15.

### III. The Board's Decision and Order

Noting that, under Section 4(*l*)(2)(B) of the Law, a claimant is presumed to be an employee, regardless of the parties' views of the relationship, the Board acknowledged that the purported employer may rebut this presumption by showing that the claimant was free from control or direction in performing his work and that he was customarily engaged in an independently established trade, occupation, profession, or business while performing services.

In the present case, the Board opined Claimant was "largely free from control and direction from Humanus." C.R., Item No. 20, Bd. Op. at 3. In reaching this conclusion, the Board determined Claimant (1) was provided a fixed rate of $18 per hour but that he could have negotiated his rate, (2) may decline any client referred to him by Humanus, (3) has hours set by the client, *i.e.*, the School, (4) received no training or resources from Humanus, except access to a video conferencing tool, (5) uses his own laptop computer, (6) buys his own supplies and receives the teaching curriculum from the School, and (7) secures and pays for his own background checks and clearances as necessary. In this regard, the Board determined Humanus satisfied the first prong of the two-pronged test. *Id.*

As to whether Claimant is customarily engaged in an independently established trade, occupation, profession, or business, the Board determined that (1) Claimant had not worked as a tutor prior to his relationship with Humanus, (2) he is only serving one client, *i.e.*, the School, even though he is permitted to provide tutoring services on his own or through a competing company, and (3) he was only providing 15 hours of tutoring services per week to the School prior to accepting

5

work at Clyde Peeling's Reptile Land after the School decreased his hours. *Id*. Thus, the Board found these circumstances weighed against a conclusion that Claimant was customarily engaged in an independently established profession or trade, and accordingly, he was not ineligible for benefits under Section 402(h) of the Law. The Board affirmed the UC referee, granting UC benefits and determining there was no previous overpayment of UC benefits. C.R., Item No. 20, Bd. Op. at 4. Humanus now petitions this Court for review.[6]

## IV. Arguments
## A. Humanus's Arguments

On appeal to this Court, Humanus agrees that the Board correctly determined Claimant is free from the direction and control of Humanus, and thus, the first prong of the two-pronged test was satisfied. Citing *Danielle Viktor, Ltd. v. Department of Labor and Industry, Bureau of Employer Tax Operations*, 892 A.2d 781 (Pa. 2006); *Stage Road Poultry Catchers v. Department of Labor and Industry, Office of Unemployment Compensation, Tax Services,* 34 A.3d 876 (Pa. Cmwlth. 2011); and *Gill v. Department of Labor and Industry, Office of Unemployment Compensation Tax Services*, 26 A.3d 567 (Pa. Cmwlth. 2011), Humanus argues that satisfaction of the second prong of the two-part test, *i.e.*, whether services are

---

[6] Our review is limited to determining whether the Board's findings were supported by substantial evidence, whether the Board committed an error of law, or whether constitutional rights were violated. *Dep't of Corr. v. Unemployment Comp. Bd. of Review*, 943 A.2d 1011 (Pa. Cmwlth. 2008). The Board's findings of fact are conclusive on appeal as long as they are supported by substantial evidence. *Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422 (Pa. 2003). "Substantial evidence is defined as evidence a reasonable mind might accept as sufficient to support the conclusion reached." *Frimet v. Unemployment Comp. Bd. of Review*, 78 A.3d 21, 26 n.7 (Pa. Cmwlth. 2013).

customarily performed in an independent trade or business, is based on three relevant factors: (1) whether the claimant was also able to perform the same services for others, (2) whether the nature of the business compelled the claimant to perform those services only for a single employer, and (3) whether the claimant worked on a job-by-job basis and was free to accept or reject assignments. Humanus's Br. at 14.

Humanus states:

> Importantly, the fact that the work does not require advanced skills or specialized training does not preclude it from being an established, independent trade or business under Section 4(*l*)(2)(B). *Stage [Rd.] Poultry Catchers*, 34 A.3d at 892 n.11.[7] In addition, where Claimant is free to accept or reject an assignment, the individual generally is not considered to look to a single employer for the continuation of such services. *Danielle Viktor*, 892 A.2d at 801. The Supreme Court in *Danielle Viktor* further held that "[i]t is difficult to fathom a situation where someone other than an individual engaged in his or her own business would possess the [. . .] prerogative to accept or reject assignments at will, to work only when he or she chose to." [*Danielle Viktor,* 892 A.2d at 797].

Humanus's Br. at 15.

---

[7] In *Stage Road Poultry Catchers*, this Court determined that individuals who worked catching chickens for Stage Road Poultry Catchers were engaged in a business, trade, or occupation where the chicken catchers were (1) free to accept or reject assignments, (2) free to catch chickens for another entity, and (3) free to decide whether to provide services on a job-by-job basis. We held that the Department erred when it determined that the workers were not free from direction and control in the performance of their work. In addition, we noted that "[a]lthough poultry catching may not require advanced skill sets, this does not preclude a finding of it being a trade, occupation, or business." *Stage Rd. Poultry Catchers*, 34 A.3d at 892 n.11.

Humanus argues that, in the present matter, the evidence of record establishes Claimant was self-employed at all relevant times. Specifically, he was able to perform the same services for other schools while working for the School, if he so chose, and he had the ability to accept and reject assignments. Humanus asserts:

> The fact that he did not perform tutoring services for other employers is irrelevant and immaterial. This is because the issue in determining whether the type of work constitutes an independent trade or business is whether the claimant was restricted from performing the services for others and whether anything in the nature of the work limits it to a single employer, not whether the claimant chooses to work for third parties. *Stage [Rd.] Poultry Catchers*, 34 A.3d [876]; *Schneider v. Unemployment Comp. Bd. of Review*, 12 A.3d 754 (Pa. Cmwlth. 2010).

Humanus's Br. at 17.

Humanus adds that the present case is akin to the situation in *Pasour v. Unemployment Compensation Board of Review*, 54 A.3d 134 (Pa. Cmwlth. 2012), where the claimant provided legal services to clients through an attorney referral company called Abelson Legal Search (Abelson), which is similar to Humanus. In *Pasour*, when the claimant's legal services were completed for the client to whom he had been referred, claimant sought unemployment compensation, asserting that Abelson was his employer. "The Board held, and this Court affirmed, that because he could perform legal services for anyone and was free to refuse referrals from Abelson, he was customarily engaged in an independently established trade or business." Humanus's Br. at 19.

Humanus argues that, since Claimant, here, was able to provide services to more than one entity, could look to more than one entity for assignments, worked on a job-by-job basis, and was free to accept or reject assignments, he was self-employed. Humanus adds that the fact Claimant only worked for one employer, for 15 hours per week, is irrelevant and immaterial. Humanus's Br. at 19.

Based on the foregoing assertions, Humanus contends that Claimant is, and at all relevant times has been, a self-employed independent contractor and that the Board's Opinion should be reversed.

**B. The Board's Argument**

"The Board concedes, as it concluded in its Decision, that Claimant was free from direction and control of Humanus. However, [the Board asserts] Humanus failed to prove that Claimant was customarily engaged in an independently-established trade, occupation, profession or business." Board's Br. at 8.

The Board contends that Claimant is not, and was not, "customarily engaged" in tutoring, as his hours working as a tutor, through Humanus, were limited to approximately 15 hours per week. Relying, in part, on *Silver v. Unemployment Compensation Board of Review*, 34 A.3d 893, 894-95, 897 (Pa. Cmwlth. 2011), the Board notes that "this Court held that a claimant who, after an application for UC benefits, spent only three hours in telephone consultations on an intermittent, 'as-needed basis' was not self-employed because the work was 'de minimis and insufficient to prove that she was customarily engaged in an independently[-]established trade, occupation, profession or business.'" Board's Br. at 8-9. In

9

addition, the Board notes that, in *Minelli v. Unemployment Compensation Board of Review*, 39 A.3d 593, 598 (Pa. Cmwlth. 2012), "this Court held that a claimant, after an application for benefits, was not customarily engaged in an independently-established trade, occupation, profession or business by providing 22 hours of service over a three-day period on an 'as needed' basis."[8] Board's Br. at 9.

Further, the Board argues "Humanus did not prove that Claimant was customarily engaged in tutoring when he did not provide tutoring work for others or hold himself out as capable of doing so." Board's Br. at 9. The Board notes that, similarly, in *Staffmore, LLC v. Unemployment Compensation Board of Review*, 92 A.3d 844 (Pa. Cmwlth. 2014), "a claimant who worked seven hours as a [therapeutic support staff (TSS)] for one entity was not customarily engaged in such activity because the claimant did not provide the same services to other employers nor did he hold himself out as capable of providing such services to anyone other than Staffmore."[9] Board's Br. at 9. The Board adds that, in *Staffmore*, this Court

---

[8] In *Minelli*, this Court reversed a Board order denying benefits to a claimant who was last employed as a consultant by DK Harris Consulting, pursuant to an independent contractor agreement. In *Minelli*, the claimant worked a total of 22 hours and used her own equipment, signed an independent contractor agreement, submitted an invoice for her services, and was free to perform work for other parties. In *Minelli*, this Court determined that the claimant performed work for DK Harris Consulting on an "as needed" basis and had ultimately performed just 22 hours of work over 3 days and that this was "'simply not enough to demonstrate that [Claimant] is customarily engaged in an independently established trade, occupation, profession or business.'" *Minelli,* 39 A.3d at 598 (citing *Silver v. Unemployment Comp. Bd. of Review*, 34 A.3d 893, 898 (Pa. Cmwlth. 2011)).

[9] In *Staffmore*, we relied on our earlier opinion in *Haines v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 2522 C.D. 2011, filed December 5, 2012), in which we determined that a claimant, who also worked as a TSS through Staffmore, but served only one client for 34 hours per week over a two-year period, was not customarily engaged as a TSS **(Footnote continued on next page…)**

reasoned specifically that the word "customarily," as used in Section 4(*l*)(2)(B) of the Law, means "habitual with an individual" or a "repeated practice." Board's Br. at 8 (quoting *Staffmore*, 92 A.3d at 847-848).

The Board asserts that, here, "Claimant had not tutored prior to his relationship with Humanus, nor was he doing so for other students," and "[t]here [was] no evidence that Claimant held himself out for tutoring outside of his work for Humanus." Board's Br. at 10. In addition, the Board notes that Claimant sought non-tutoring work after the School decreased his work hours. *Id*. Thus, "like the claimants in *Haines* and *Staffmore*, Claimant did not have a repeated or routine practice to satisfy the customarily engaged component under Section 4(*l*)(2)(B) of the Law. Additionally, Claimant was working approximately 32 hours per week for Clyde Peeling's Reptile Land and about 15 hours per week in tutoring." *Id*. The Board maintains that, like the claimant in *Haines*, Claimant, in the present matter, could not practically work anywhere else and, thus, was not commonly or repeatedly engaged as a tutor. *Id*.

Citing "*Lowman v. Unemployment Compensation Board of Review*, 178 A.3d 896 (Pa. Cmwlth.) (*en banc*), [*pet. for allowance of appeal*] *granted*, 199 A.3d 862 (Pa. 2018),"[10] the Board argues that a claimant for UC benefits cannot be

---

because, practically speaking, she could not work for any other entity in a similar capacity and did not hold herself out as available for employment as a TSS for anyone other than Staffmore.

[10] We note here that, after the Board submitted its brief in this matter, our Supreme Court filed its opinion in *Lowman v. Unemployment Compensation Board of Review*, __ A.3d __ (Pa., No. 41 EAP 2018, filed July 24, 2020), affirming this Court and addressing the "positive steps" analysis. We analyze this in our "Discussion" section below.

disqualified unless he takes positive steps to embark on an independent trade or business. The Board adds that a claimant who, after applying for and receiving UC benefits, is not self-employed when his actions do not reflect an "entrepreneurial spirit" or "intentions of starting a new business [or] trade." Board's Br. at 11 (citing *Lowman,* 178 A.3d at 903) (quoting, in part, *Buchanan v. Unemployment Comp. Bd. of Review*, 581 A.2d 1005, 1008 (Pa. Cmwlth. 1990)). The Board asserts that, "[h]ere, Claimant did not take any steps to hold himself out as a tutor, such as advertising or incorporating. Instead, Claimant's tutoring hours declined, so he sought non-tutoring work with [Clyde Peeling's] Reptile Land, further supporting the idea that his tutoring activity was simply a means to earn additional money and not an 'entrepreneurial spirit with all intentions of starting a new business, trade, profession or occupation.'" Board's Br. at 11-12 (quoting *Buchanan*, 581 A.2d at 1008).

Addressing Humanus's reliance on our opinion in *Pasour*, the Board contends *Pasour* is distinguishable from the matter *sub judice*. As the Board notes, the claimant in *Pasour* was not already receiving UC benefits as a result of his separation from prior employment, but was seeking to qualify for benefits, while, here, Claimant had already qualified for UC benefits based on his prior employment. Further, unlike the claimant in *Pasour*, who was an attorney, there is no evidence that Claimant in the present matter held himself out as capable of performing tutoring services for anyone else who wanted them. "In fact, the claimant in *Pasour* had worked as an attorney for approximately 8 years prior to the relationship with the referral company, thus satisfying the statutory requirement to be 'customarily

12

engaged' in the trade or profession. Therefore, *Pasour* does not require a different result here." Board's Br. at 13 (citation omitted).

The Board further argues that Humanus's reliance on *Stage Road Poultry Catchers* is misplaced, noting the issue before us is not whether Humanus is an employer for purposes of UC tax contributions, as in *Stage Road Poultry Catchers*, but, rather, whether Claimant's activities as a tutor, through Humanus, constitutes self-employment.

## V. Discussion

At the outset, we observe that the act of signing an independent contractor agreement does not, in and of itself, establish independent contractor status. *Sharp Equip. Co. v. Unemployment Comp. Bd. of Review*, 808 A.2d 1019 (Pa. Cmwlth. 2002). We also observe that, "in concluding whether an employment relationship exists, no single factor is controlling." *Clark v. Unemployment Comp. Bd. of Review*, 129 A.3d 1272, 1278 (Pa. Cmwlth. 2015). In the present matter, the parties agree that Claimant operated free from Humanus's direction and control, in satisfaction of the first prong of the two-pronged test, thus this matter is narrowed to the issue of whether Humanus met its burden on the second prong of the test set out in Section 4(*l*)(2)(B) of the Law, *i.e.*, whether Humanus proved that Claimant was customarily engaged in an independently-established trade, occupation, profession, or business.

There is no dispute that, among other things, Claimant signed an independent contractor agreement with Humanus, that Humanus provided referrals

13

to Claimant which he was permitted to accept or refuse, and that Humanus did not provide Claimant with any tools or equipment to perform his tutoring services. Claimant received no training or resources from Humanus, except access to a video conferencing tool. He uses his own laptop computer, and he buys his own supplies. In addition, Claimant obtains, and pays for, his own background checks and clearances.

In our *en banc* opinion in *Lowman*, we re-enunciated standards set forth in our earlier opinion in *Buchanan*, in which we looked to whether the claimant had taken a "positive step" toward establishing a business. *Lowman*, 178 A.3d at 900 (quoting *Buchanan*, 581 A.2d at 1008). In *Lowman*, we specifically weighed such factors as whether the claimant had advertised, listed a business phone number, had business cards, obtained insurance, and whether the claimant's actions reflected "an entrepreneurial spirit" or "intentions of starting a new business [or] trade." *Lowman*, 178 A.3d at 903 (quoting *Buchanan*, 581 A.2d at 1008). However, our Supreme Court, in its recent opinion in *Lowman v. Unemployment Compensation Board of Review*, __ A.3d __ (Pa., No. 41 EAP 2018, filed July 24, 2020), stated that "[e]ither a claimant is self-employed or not. The concept of referring to activities as "positive steps" adds nothing to the analysis of the actual services performed by a claimant." *Id.* at __, slip op. at 14 n.23. Our Supreme Court, in *Lowman*, stated "[w]e express no opinion on the use of a 'positive steps' analysis as part of the test for self-employment embodied in Section [4(*l*)(2)(B) of the Law] where the personal services are performed by an individual in a stand-alone context." *Id. at* __, slip op. at 14 n.24. The *Lowman* Supreme Court opined that its interpretation of this [Section] "promotes a comprehensive understanding of a claimant's personal services. Unlike the

14

'positive steps' test, which focuses on a claimant's stand-alone activities, Section [4(*l*)(2)(B)] requires a structured two-factor analysis of a claimant's personal services where they are performed within the context of a work relationship with a third party." *Id.* at __, slip op. at 14. Our Supreme Court added:

> In the context of determining whether an individual is engaged in self-employment and therefore, ineligible for benefits, an analysis using Section [4(*l*)(2)(B) of the Law] does not evaluate what a claimant could do, but what he has done and/or is doing in terms of providing personal services for remuneration. Looking at a claimant's real-time activities through the lens of Section [4(*l*)(2)(B) of the Law] avoids speculation based on hypothetical considerations and aids in evaluating a claimant's actual status for eligibility purposes.

*Id.* at __, slip op. at 17.

In the present matter, there is no evidence that Claimant took any sort of positive step toward establishing a business. However, whether we utilize a "positive step(s)" analysis or not, Claimant was not a trained tutor who made his services available to anyone but the School. He secured the tutoring position through Humanus. He worked 15 hours per week as a tutor for the School. Although he could have accepted other tutoring assignments had they come along, he did not, and it does not appear from the record that he sought any such other opportunities. In fact, as the Board argued, Claimant would have had little time, if any, to pursue such opportunities, in light of his acceptance of a non-tutoring, 32-hour per week position with Clyde Peeling's Reptile Land. His real time activities indicate he was engaged as a tutor for 15 hours per week, strictly for the School, through Humanus.

15

In addition to its recent pronouncement(s) in *Lowman*, our Supreme Court opined, in *A Special Touch v. Department of Labor and Industry, Office of Unemployment Compensation Tax Services*, 228 A.3d 489 (Pa. 2020), a case, like *Stage Road Poultry Catchers*, regarding employment status for UC tax purposes, that the "phrase 'customarily engaged,' as used in Section 4(*l*)(2)(B) of the Law, requires that an individual actually be involved, as opposed to merely having the ability to be involved, in an independently established trade, occupation, profession, or business." *Id*. at 505-06. Based on the evidence of record, there is no indication that Claimant, here, met such a standard.

## VI.  Conclusion

Based on the evidence of record and the leading law, we see no error by the Board in its determination that Humanus failed to meet its burden of proving Claimant was self-employed. Although it is true that Claimant operated with a certain amount of independence in his relationship with Humanus, there is insufficient evidence to support the alternative outcome, *i.e.*, that Claimant was customarily engaged in an independently established profession and, thus, was ineligible for UC benefits. Accordingly, we affirm the Board's order.

_____
J. ANDREW CROMPTON, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Humanus Corporation,                          :
                           Petitioner          :
                                               :
            v.                                 :   No.  1193 C.D. 2019
                                               :
Unemployment Compensation                      :
Board of Review,                               :
                          Respondent           :

## **O R D E R**

**AND NOW**, this 23rd day of October 2020, the Order of the Unemployment Compensation Board of Review is **AFFIRMED**.

_____
J. ANDREW CROMPTON, Judge