# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amy Westerman, : 
          Petitioner : 
           : 
          v. : No. 1019 C.D. 2019
           : Submitted: May 11, 2020
Unemployment Compensation : 
Board of Review, : 
          Respondent : 

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**          **FILED: June 5, 2020**

Amy Westerman (Petitioner) petitions for review of an Order of the Unemployment Compensation (UC) Board of Review (Board), which affirmed a Referee's decision finding Lauren McGinnis (Claimant) not ineligible for UC benefits under Section 402(h) of the UC Law,[1] 43 P.S. § 802(h). Petitioner argues the Board erred in concluding Claimant was an employee and not self-employed as an independent contractor. Petitioner also asserts she was denied due process because she requested a continuance of the Referee's hearing but did not receive one. However, Petitioner did not raise that issue to the Board; accordingly, it was

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(h), which provides, in relevant part, that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which he is engaged in self-employment. . . ."

not preserved for our review. As for the merits, discerning no error, we affirm the Board's Order.

## I.    BACKGROUND

In January 2019, Claimant filed an application for UC benefits after separating from her position with Full Range Physical Therapy.[2] On the application, Claimant identified Petitioner as someone for whom she also performed travel agent services. Petitioner received notice of Claimant's application and completed a form and questionnaire indicating that Claimant was not an employee of Petitioner. (Certified Record (C.R.) Item 4.) Thereafter, the local Service Center found Claimant ineligible for benefits pursuant to Section 402(h) of the UC Law relating to self-employment. On the same day the notice of determination was issued, Petitioner sent UC authorities a copy of a document titled "Independent Contractor Agreement" between Petitioner and Claimant. (C.R. Item 6.)

Claimant appealed the Service Center's determination, and a hearing before a Referee was scheduled for April 9, 2019. Claimant personally appeared at the hearing. The Referee, at the start of the hearing, called Petitioner, but there was no answer. The Referee left a voicemail for Petitioner indicating that the hearing was underway and if Petitioner received the message before the end of the hearing, Petitioner should contact the Referee's office. (Hr'g Tr. at 1, C.R. Item 10.) The Referee further stated that the notice of hearing was mailed to Petitioner, the notice of hearing was not returned as undeliverable, and there was nothing in the record

_____

[2] Claimant's separation from Full Range Physical Therapy is not at issue in this appeal.

2

indicating that Petitioner contacted the Referee's office requesting a continuance. (*Id.* at 2.)

The Referee then marked the exhibits in the hearing file. While doing so, the Referee mentioned there were additional documents in the hearing file, but the Referee "d[id] not know the relevance of these documents to the issue under appeal" and, therefore, "they will not be entered into the record at this time; however, [they] could be entered into the record during the testimony and presentation of evidence of the party who would be presenting those documents." (*Id.* at 3.) The Referee did not identify those documents, but from a review of the record, they appear to include the independent contractor agreement Petitioner submitted, as it is not otherwise marked as an exhibit.

Claimant then testified as follows. Claimant began performing travel agent services for Petitioner "years ago" and was compensated on a commission basis. (*Id.* at 5.) She received a Form 1099. The Referee asked Claimant whether she would jeopardize her relationship with Petitioner if she entered into a relationship of a similar nature with another company, and Claimant responded "most likely." (*Id.* at 5-6.) When asked if Petitioner directed Claimant's work, Claimant responded no because she trained as a Disney-certified travel agent under another company. (*Id.* at 6.) Claimant received "minimal[]" training from Petitioner, "mostly just the operations of [the] company." (*Id.*) Petitioner provided Claimant with access to certain tools needed to perform her work, namely, a company email and a user name and password to access specific websites for bookings. Claimant generated business through word of mouth and postings on social media. In 2018, Claimant booked one trip, which was in October, and at the time of the hearing, Claimant did not "have any current bookings or packaging previously, currently, or

3

in the near future." (*Id.* at 7-8.) Claimant started working for a new employer providing physical therapy in April 2019. The Referee asked whether Claimant "in any way would [] be establishing [her]self as a business or within the profession as a [t]ravel [a]gent in the duties similar to what [she] performed for [Petitioner,]" and Claimant responded "[n]o, not as a business." (*Id.* at 8.) Claimant explained that she began working with Petitioner while she attended college where she was pursuing a degree in physical therapy "as just something to kind of, you know, pay the bills whenever I could essentially." (*Id.*) Petitioner never expected Claimant to pursue the work full time, and Claimant never intended to pursue it full time, even when she was laid off. (*Id.*) According to Claimant, unless someone booked a Disney trip daily, a person could not make a living off the salary. Claimant considered her work with Petitioner "a secondary . . . job" and never intended "to make it a full-blown career." (*Id.*)

Based upon the evidence, the Referee issued a decision finding Claimant was not ineligible for benefits under Section 402(h). The Referee made the following findings of fact:

1. The [C]laimant filed an application for unemployment compensation benefits with an effective date of January 6, 2019.

2. The [C]laimant was employed with Full Range Physical Therapy, last working on January 15, 2019, which is not an issue in this appeal.

3. For purposes of this appeal, in 2014 the [C]laimant entered [into] a relationship with [Petitioner], where the [C]laimant performed services as a travel agent.

4. The [C]laimant last performed work in October 2018.

4

5. The [C]laimant is free from control and direction of [Petitioner], and can independently start and stop performing services at her leisure.

6. The [C]laimant received form 1099 from [Petitioner].

7. The [C]laimant was seeking and available for full-time employment.

(Referee's Decision, Findings of Fact (FOF) ¶¶ 1-7.)

After recounting the law concerning self-employment, the Referee found that "[a]lthough, the [C]laimant was free from direction and control, the record is void of competent evidence to establish that the [C]laimant was customarily engaged in an independently established trade, occupation, business, or profession." (Referee's Decision at 3.) As a result, the Referee concluded Claimant was not self-employed and was, therefore, not ineligible for benefits under Section 402(h). (*Id.*)

Petitioner then filed an appeal to the Board. Therein, Petitioner stated she was "appeal[ing] the decision that the [C]laimant] . . . is granted benefits due to the inability to conclude she is self-employed." (C.R. Item 12.) Petitioner asserted "[t]he decision stated this is not related to [Claimant's] filing against Full Range Physical Therapy," and Petitioner was "unsure what this final decision means." (*Id.*) Finally, Petitioner indicated that she had obtained legal representation and provided contact information for an attorney in South Carolina, where Petitioner is based, asking that the attorney receive any correspondence. There is no indication in the record that Petitioner or her then-counsel filed anything further with the Board.

On July 2, 2019, the Board issued its Order affirming the Referee's Decision. In doing so, the Board adopted and incorporated the Referee's findings

5

and conclusions. The Board also found "[C]laimant's testimony that she was not free to offer her services as a travel agent to anyone who wished to avail themselves of her services" credible, and concluded "[C]laimant was not acting as a self-employed, independent contractor." (Board Order.)

Petitioner now seeks review of the Board's Order with this Court.

## II. PARTIES' ARGUMENTS

On appeal,[3] Petitioner argues Claimant is ineligible for UC benefits because she is a self-employed travel agent. Petitioner asserts that to prove Claimant was self-employed, under the UC Law, Petitioner must show, first, that Claimant was free of control and direction and, second, that Claimant was customarily engaged in an independent trade, occupation, business, or profession. While the Board found the first part of the test, control, was satisfied, it did not find the second part, customarily engaged in an independent trade, was satisfied, which Petitioner argues was error. In support of Petitioner's argument, Petitioner cites Claimant's application for benefits, in which Claimant responded "yes" to questions that she was an independent contractor and was customarily engaged in an independently established trade. (Petitioner's Brief (Br.) at 11 (citing Reproduced Record (R.R.) at 14a).) Petitioner also points to the independent contractor agreement with Claimant, which provides that Claimant was free to provide travel agency services, except for Disney trips, to others. Petitioner argues that the fact Claimant chose not to provide similar services to others or to work part time is not determinative of

---

[3] This Court's scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of facts are supported by substantial evidence. *Johns v. Unemployment Comp. Bd. of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

6

Claimant's employment status. Lastly, Petitioner argues she was denied due process because the hearing before the Referee "proceeded despite the fact that [Petitioner] was unable to attend and specifically informed the [] Referee['s] Office of [a] scheduling conflict, in writing, prior to the hearing date." (Petitioner's Br. at 13.)

The Board responds as follows. The only finding of fact that Petitioner challenges is whether Claimant was free to offer travel agency services to anyone. This finding is supported by substantial evidence, namely, Claimant's testimony that she would most likely jeopardize her relationship with Petitioner if she accepted similar work elsewhere. The Board also cites as evidence Claimant's response in her application for benefits that she could not offer identical services to others or work for several individuals at the same time. Viewing the evidence in the light most favorable to the prevailing party below, here Claimant, the Board argues this evidence supports its findings and Petitioner is seeking to have this Court reweigh the evidence, which it cannot do. As for the independent contractor agreement, the Board asserts it was excluded from the record by the Referee because it was not considered by the Service Center when it issued the notice of determination, and therefore, is extra-record evidence and cannot be considered. (Board's Br. at 7 n.7.) Even if it is considered, the Board argues the agreement supports the Board's finding because it demonstrates "Claimant still could not offer her services to **anyone** who wished to avail themselves." (*Id.* at 9 n.9.) The Board further asserts that Petitioner did not satisfy the heavy burden of rebutting the presumption that a person who receives wages is an employee. It concedes the first element, control, is satisfied, but contends Petitioner has not shown that Claimant was customarily engaged in an independent trade. The Board argues

7

Claimant's conduct demonstrates she is not so engaged. As evidence, the Board points to Claimant seeking and obtaining work in the physical therapy field, Claimant not offering travel agency services to anyone else since entering into the agreement with Petitioner in 2014, and Claimant's sporadic work for Petitioner. With respect to Claimant's responses to the application for benefits, in which she indicated she was an independent contractor, the Board asserts this is a conclusion of law, not a factual issue. Finally, the Board maintains Petitioner did not raise the due process argument before the Board; therefore, that issue is waived. It also notes the Referee indicated on the record that Petitioner did not contact the Referee's office for a continuance.

## III. DISCUSSION

Section 402(h) of the UC Law provides that a claimant is ineligible for UC benefits in any week in which the claimant is engaged in self-employment. 43 P.S. § 802(h). The UC Law does not define self-employment, so the courts have looked at the UC Law's definition of "employment" in Section 4(*l*)(2)(B), 43 P.S. § 753(*l*)(2)(B), for guidance. *HPM Consulting v. Unemployment Comp. Bd. of Review*, 185 A.3d 1190, 1193 (Pa. Cmwlth. 2018). Section 4(*l*)(2)(B) of the UC Law provides, in relevant part, that

> [s]ervices performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that--(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. § 753(*l*)(2)(B).

8

Thus, Section 4(*l*)(2)(B) of the UC Law sets forth a two-prong test for determining whether a claimant is an independent contractor, examining, first, the degree of control or direction over the work performed, and second, whether the claimant is customarily engaged in an independently established trade, occupation, profession, or business. Because there is a presumption that someone receiving wages is an employee, the burden is on the employer to satisfy the two-prong test. *Jia v. Unemployment Comp. Bd. of Review*, 55 A.3d 545, 548 (Pa. Cmwlth. 2012). An employer bears a heavy burden to rebut the presumption. *Id.*

Here, the Board, through its incorporation and adoption of the Referee's findings, found Claimant was free from Petitioner's direction and control. (Referee's Decision, FOF ¶ 5.) Therefore, the first prong is satisfied and not in dispute. Rather, it is the second prong, whether Claimant is customarily engaged in an independently established trade, occupation, profession, or business, over which the parties disagree.

The nature of the relationship between a claimant and a putative employer is fact specific. *Staffmore, LLC v. Unemployment Comp. Bd. of Review*, 92 A.3d 844, 847 (Pa. Cmwlth. 2014). However, a review of other cases in which we examined what it means to be customarily engaged in an independently established trade is insightful. In *Staffmore*, we considered whether a claimant was an employee of a staffing agency or an independent contractor. In that case, the claimant signed an independent contractor agreement with the staffing agency to provide services as therapeutic support staff (TSS). The claimant worked for one client seven hours per week through the staffing agency. When the client ended its relationship with the staffing agency, the claimant advised he would no longer accept assignments because he was also teaching at two school districts. The claimant subsequently

9

became unemployed and sought benefits. A local service center found the claimant ineligible on the basis he was self-employed. A referee reversed, and the Board reversed the referee's decision.

Similar to the instant matter, the sole issue in *Staffmore* was whether the claimant was customarily engaged in an independently established trade, occupation, profession, or business. We determined the claimant was not, noting that there was no evidence that the claimant held himself out for employment as a TSS elsewhere and only worked as a TSS seven hours a week. *Id.* at 849. As a result, we concluded the staffing agency "did not meet its burden to prove [the c]laimant 'commonly,' 'repeated[ly]' 'employ[ed] . . . oneself' or 'embarked on' a trade, occupation, profession or business that was independently established." *Id.* (quoting Merriam-Webster's Collegiate Dictionary 308 (11th ed. 2014); Black's Law Dictionary 608 (9th ed. 2009)). The Court further recognized the remedial, humanitarian objective of the UC Law in concluding the staffing agency did not meet its burden.[4] *Id.*

Our decision in *Staffmore* was based in part on our decision in *Jia* where the Board found the claimant ineligible for UC benefits under Section 402(h). In doing so, the Board found, in relevant part, that the claimant signed an independent contractor agreement, received a 1099 form, did not have to attend meetings, could work from home, was paid for hours worked, could work elsewhere so long as there was no conflict of interest, and provided his own insurance. *Jia*, 55 A.3d at

---

[4] Although the Court concluded the claimant was not ineligible for benefits under Section 402(h) of the UC Law, we vacated the Board's order and remanded the matter for a hearing on whether the claimant was ineligible for benefits under Section 402(b) of the UC Law, 43 P.S. § 802(b), related to voluntarily quitting one's employment without a necessitous and compelling reason.

547. We held the employer did not meet its burden of rebutting the presumption that the claimant was an employee. Although we questioned the Board's finding that the employer controlled the claimant, we ultimately resolved the matter based on the second prong, concluding the Board erred in concluding the claimant was customarily engaged in an independent trade. *Id.* at 548-49. First, we concluded the fact that the employer and the claimant entered into a consulting agreement was not dispositive. *Id.* at 549. Instead, we stated the relevant inquiry was "whether: (1) the claimant was capable of performing the activities in question for anyone who wished to avail themselves of his services; and, (2) the nature of the business compelled the claimant to look to only a single employer for continuation of work." *Id.* Noting the importance of an employer providing evidence to show a claimant is engaged in an independent business, we concluded the record was devoid of such evidence. *Id.* Although the consulting agreement provided that the claimant could perform work for others, we stated that "does not establish that he engaged in an independent business, and did work for others." *Id.* We also noted that because the claimant was required to work certain hours at the employer's offices, it undermined the claimant's ability to work elsewhere. *Id.* Thus, we concluded the employer did not meet its burden and reversed the Board's determination.

We reached a similar conclusion in *Clark v. Unemployment Compensation Board of Review*, 129 A.3d 1272 (Pa. Cmwlth. 2015). There, the issue was whether the claimant earned sufficient wages from employment during the relevant time period to qualify for UC benefits under Section 4(w)(2) of the UC Law, 43 P.S. § 753(w)(2); however, to make this determination, we had to determine whether the claimant was employed or self-employed. We stated that "self-

11

employment requires a positive act of establishing a private enterprise or independent business." *Clark*, 129 A.3d at 1277. We further explained that acceptance of "an occasional offer of work is simply not enough to demonstrate that [the claimant] is customarily engaged in an independently established trade, occupation, profession or business." *Id.* (citing *Minelli v. Unemployment Comp. Bd. of Review*, 39 A.3d 593, 598 (Pa. Cmwlth. 2012), and *Silver v. Unemployment Comp. Bd. of Review*, 34 A.3d 893, 898 (Pa. Cmwlth. 2011)). We also explained that the lack of a W-2 form is not conclusive evidence of self-employment. *Id.* at 1278.

We reiterated this holding in *HPM Consulting*. There, the Board found a claimant who worked as a safety consultant for the employer not ineligible for benefits under Section 402(h). The employer appealed to this Court arguing, among other things, that the claimant signed an agreement that identified the claimant as an independent contractor and the claimant received a Form 1099 instead of a W-2. *HPM Consulting*, 185 A.3d at 1192-93. Citing *Clark*, 129 A.3d at 1277-78, we explained that the fact a claimant does not receive a W-2 is not conclusive evidence of self-employment. *HPM Consulting*, 185 A.3d at 1193. In addition, we explained that "the existence of an independent contractor agreement is not dispositive of the work relationship." *Id.* (quotation and emphasis omitted). In analyzing the second prong of the self-employment test, we noted the claimant testified he did not consider himself or desire to be a Form 1099 employee, and the employer's witness testified he was "not clear" on whether the claimant ever performed similar services for anyone else. *Id.* at 1194 (emphasis omitted). We concluded that the record was devoid of any evidence that the claimant customarily

12

engaged in an independent business and, therefore, the employer did not rebut the presumption of an employment relationship.[5] *Id.* at 1197.

Most recently, the Pennsylvania Supreme Court examined what it means to be "customarily engaged" in an independently established trade in *A Special Touch v. Department of Labor and Industry, Office of Unemployment Compensation Tax Services*, __ A.3d __, (Pa., No. 30 MAP 2019, filed April 22, 2020). The Supreme Court applied basic principles of statutory construction and concluded Section 4(*l*)(2)(B) is unambiguous and the plain language of the terms "customarily" and "engaged" requires "a putative employer to show that an individual is **actually involved** in an independent trade, occupation, profession, or business in order to establish that the individual is self-employed." *Id.* at __, slip op. at 22 (emphasis added). The Supreme Court rejected the notion that an individual only needs to "**be capable** of being involved in an independently established trade, occupation, profession, or business." *Id.* (emphasis added). The Supreme Court further explained that it understood "the burdens imposed on employers under [its] interpretation, [but] to require that an individual merely be capable of performing their services for others would be to ignore the plain language of the statute and render the 'customarily engaged' requirement meaningless." *Id.* at __, slip op. at 23. The Supreme Court cautioned that its "interpretation does not equate 'actual involvement' to a requirement that an individual 'actually performed his or her services' for third parties during a given time period," recognizing that a claimant

---

[5] Although we affirmed the Board to the extent it found the claimant was not ineligible for benefits under Section 402(h), we reversed the Board's order and remanded for further proceedings to determine the identity of the claimant's employer and whether the claimant was ineligible under Section 402(b) for declining two job offers.

can be satisfied working for one client and still be an independent contractor. *Id.* at __, slip op. at 24. The Supreme Court stated:

> the analysis under this requirement does not simply turn on the extent to which an individual actually provides his or her services to either the putative employer or third parties, although these considerations are certainly relevant. Rather, the "customarily engaged" language can encompass more activity than actually providing services for others, so long as it is demonstrated that the individual is in some way actually involved in an independently established trade or business. In this respect, we agree . . . that circumstances demonstrating that an individual is actively holding himself out to perform services for another, such as through the use of business cards or other forms of advertising, even if not actually performing those services during a particular time period at issue, are also relevant to the analysis.[]

*Id.* In short, the Supreme Court held "the phrase 'customarily engaged' . . . requires that an individual actually be involved, as opposed to merely having the ability to be involved, in an independently established trade, occupation, profession, or business" and such a determination is fact dependent. *Id.* at __, slip op. at 25-26.

With the above principles in mind, we now examine the specific facts of this case. Similar to the employers in *HPM Consulting* and *Clark*, Petitioner here argues Claimant's testimony that she received a Form 1099 and the existence of the independent contractor agreement demonstrates Claimant was, in fact, self-employed. However, as we held in both of those cases, neither the lack of a W-2 nor the existence of an independent contractor agreement is dispositive of whether a claimant is self-employed. *HPM Consulting*, 185 A.3d at 1192-93; *Clark*, 129 A.3d at 1278. Furthermore, the independent contractor agreement upon which Petitioner relies was not admitted to the record by the Referee and, therefore, was not before the Board. *See* 34 Pa. Code § 101.106 ("In connection with the

consideration of an appeal to the Board from the decision of a referee, the Board may review both the facts and the law pertinent to the issues involved on the basis of the evidence previously submitted . . . .").  Even if the independent contractor agreement is considered, we agree with the Board that it does not require a different result.  The independent contractor agreement provides that Claimant "shall use [Petitioner] as [Claimant]'s **sole and exclusive** means of booking all possible aspects of a Disney Destination and Universal Orlando" trip, but "[t]his exclusivity requirement does not apply to [Claimant]'s bookings for any non-Disney Destination."  (Independent Contractor Agreement ¶ 2(c), C.R. Item 6 (emphasis added).)  Thus, the Board's finding that Claimant was not free to provide similar services to **anyone** is not contradicted because there were limits on Claimant's ability to offer travel agency services to others.

Likewise, we are not persuaded that Claimant's responses in her application for benefits dictates a finding that Claimant was self-employed.  Although Claimant responded yes to questions regarding whether "the company consider[ed] [Claimant] a consultant or an independent contractor" and whether Claimant was "customarily engaged in an independently established trade, occupation, profession, or business," (Internet Initial Claims, Independent Contractor Supplemental Information, Questions A & D, C.R. Item 2), "neither the intent of the parties nor the terminology used by the parties to describe their relationship is dispositive." *Hartman v. Unemployment Comp. Bd. of Review*, 39 A.3d 507, 511 (Pa. Cmwlth. 2012).  "Instead, the court must examine the actual relationship between the parties." *Id.* at 512.  As the Supreme Court recently stated, "the phrase 'customarily engaged' . . . requires that an individual actually be involved, as opposed to merely having the ability to be involved, in an independently

15

established trade, occupation, profession, or business." *A Special Touch*, __ A.3d at __, slip op. at 26.

The record evidence here supports the Board's conclusion that Petitioner did not meet the heavy burden of demonstrating that Claimant was self-employed. Claimant testified that her employment relationship with Petitioner would "most likely" be affected if she performed similar work for others. (Hr'g Tr. at 5-6.) She further testified that in the year prior to her separation from the physical therapy position, she booked a single trip for Petitioner and had no current or future bookings. (*Id.* at 7-8.) When the Referee asked whether Claimant "in any way would [] be establishing [her]self as a business or within the profession as a [t]ravel [a]gent in the duties similar to what [she] performed for [Petitioner,]" Claimant responded "[n]o, not as a business." (*Id.* at 8.) Claimant explained that she began working with Petitioner while Claimant was pursuing her physical therapy degree as a way to help pay the bills and unless someone booked a Disney trip every day, no one could support themselves. (*Id.*) Claimant also testified that Petitioner never expected Claimant to pursue the work full time, and Claimant never intended to pursue it full time, even when she was laid off. (*Id.*) Claimant considered her work with Petitioner "a secondary . . . job" and never intended "to make it a full-blown career." (*Id.*) Claimant here is similar to the claimants in *Staffmore* and *Clark* in that there is no evidence Claimant actually sought to establish an independent business as a travel agent outside of the limited work she performed for Petitioner. The Supreme Court recently made it clear that in order to be "customarily engaged" in an independently established profession, it must be shown that "an individual [is] actually [] involved, as opposed to merely having the ability to be involved, in an independently established trade, occupation,

16

profession, or business." *A Special Touch*, __ A.3d at __, slip op. at 26. The burden was on Petitioner to demonstrate that Claimant "customarily engaged in an independently established trade, occupation, profession or business," which Petitioner did not do. 43 P.S. § 753(*l*)(2)(B); *Jia*, 55 A.3d at 548.

That brings us to Petitioner's other issue, whether Petitioner was denied due process when Petitioner sought a continuance of the Referee hearing, but the hearing proceeded as scheduled. We agree with the Board that this issue is not properly before the Court as there is no evidence that Petitioner preserved the issue below. *Crabbe v. Unemployment Comp. Bd. of Review*, 179 A.3d 1183, 1189-90 (Pa. Cmwlth. 2018).[6] Therefore, the issue is waived.

## IV. CONCLUSION

In summary, Petitioner bore the heavy burden of rebutting the presumption that Claimant was an employee. Although the parties do not dispute that Petitioner did not exercise control over Claimant, Petitioner also had to establish that

---

[6] Even had the argument been raised by Petitioner to the Board, Petitioner failed to develop the argument in her brief. The entirety of Petitioner's argument on this issue is as follows:

> [Petitioner] was not afforded due process in this matter. The hearing proceeded despite the fact that [Petitioner] was unable to attend and specifically informed the [] Referee Office of her scheduling conflict, in writing, prior to the hearing date.

(Petitioner's Br. at 13.) "Arguments not properly developed in a brief will be deemed waived by this Court." *Rapid Pallet v. Unemployment Comp. Bd. of Review*, 707 A.2d 636, 638 (Pa. Cmwlth. 1998). Accordingly, Petitioner's argument is waived. Regardless, Petitioner's assertions are belied by the record. After attempting to call Petitioner, the Referee indicated that notice of hearing was mailed to Petitioner, the notice of hearing was not returned as undeliverable, and there was nothing in the record indicating that Petitioner contacted the Referee's office requesting a continuance. (Hr'g Tr. at 2.)

17

Claimant was customarily engaged in an independently established trade, occupation, profession, or business. A review of the record reveals no such evidence. Further, Petitioner's argument that she was denied due process because her request for a continuance was not granted was waived because it was not raised to the Board. Discerning no error, we affirm the Board's Order.

_____

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amy Westerman,                               :
                    Petitioner              :
                                            :
          v.                                :     No. 1019 C.D. 2019
                                            :
Unemployment Compensation                   :
Board of Review,                            :
                    Respondent              :

# **O R D E R**

**NOW**, June 5, 2020, the Order of the Unemployment Compensation Board of Review, in the above-captioned matter, is **AFFIRMED.**

_____
**RENÉE COHN JUBELIRER,** Judge